J-S34003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.E.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 814 MDA 2021 |

Appeal from the Decree Entered May 27, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2021-0475

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.: **FILED: DECEMBER 8, 2021**

M.C. ("Father") appeals from the May 27, 2021 Decree entered in the Lancaster County Court of Common Pleas that terminated his parental rights to then-twenty-two month old E.E.W. ("Child") pursuant to 23 Pa.C.S. § 2511(a) and (b). With this appeal, Appellant's counsel, H. Allison Wright, Esq., has filed an Application for Leave to Withdraw as Counsel ("Motion to Withdraw") and an **Anders**[1] Brief. After careful review, we grant counsel's Motion to Withdraw and affirm the Decree.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history, as gleaned from the trial court's Pa.R.A.P. 1925(a) Opinion, is as follows. Father and E.A.G-F.

---

[1] **Anders v. California**, 386 U.S. 738 (1967). **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009) (applying **Anders**). Although counsel has labeled the brief "Brief for Appellant," we refer to it throughout this Memorandum as an **Anders** Brief.

("Mother") are parents to Child, who was born in July 2019.[2] Mother, who was homeless at the time, voluntarily placed Child with the Lancaster Children and Youth Social Service Agency (the "Agency") and on November 27, 2019, the trial court awarded temporary custody of child to the Agency. On January 23, 2020, the court held an adjudicatory hearing. Father, who sustained a traumatic brain injury as a child and suffers from bipolar disorder, depression, and paranoia, was present at the hearing and conceded that he was not ready, willing, and able to parent the Child.[3] The trial court proceeded to adjudicate Child dependent and place Child in a pre-adoptive foster home.

The trial court approved a permanency plan for reunification, which included the following objectives for Father to complete to reunify with Child: improve mental health, remain crime-free, learn and utilize appropriate parenting skills, remain financially stable, obtain appropriate housing, remain free from domestic violence, and visit with Child.

The trial court held permanency review hearings on July 9, 2020, December 23, 2020, and May 12, 2021, and at each hearing found that Father was minimally compliant with the permanency plan objectives and had made minimal progress towards reunification with Child. Notably, in August 2020,

_____

[2] J.G.F. is listed as Child's parent on Child's birth certificate. Genetic testing confirmed that Father is Child's biological parent. Mother and J.G.F. both voluntarily relinquished their parental rights to Child and are not subjects of this appeal.

[3] When Father was eight years old he was involved in a car crash that killed both of his parents and caused him to sustain a traumatic brain injury.

Father left a voice message for the Agency caseworker stating he did not want to visit with Child and did not want to be involved with Child. Father subsequently failed to visit with Child or communicate with the Agency for approximately three months until November 2020, when Father informed the Agency that he had moved to Florida, but that he had now returned and wanted to resume visitation with Child.

On March 4, 2021, the Agency filed a Petition to Terminate Parental Rights of Father. On April 22, 2021, the trial court held a hearing on the petition.[4] The court heard testimony from Agency caseworker Kara Davis and Father. Additionally, per the Agency's request, the trial court incorporated the dependency proceedings into the record.

In sum, Ms. Davis testified that Father failed to: engage in mental health counseling; inform the Agency what, if any, medication he was on; appear or stay to complete for his scheduled parenting capacity evaluation on approximately six occasions; participate in parenting program referred by Agency; provide the Agency with a copy of his lease; obtain appropriate

---

[4] Consistent with our Supreme Court's holding *In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020), we verify that the trial court appointed Catharine Roland, Esquire, the guardian *ad litem* during the dependency proceedings, to represent Child in the termination proceedings pursuant to 23 Pa.C.S. § 2313(a). *See K.M.G., supra* at 1224. (reiterating that, absent a conflict between legal interest and best interests, one attorney may serve dual role of guardian *ad litem* and Section 2313 counsel). The trial court found that Child was too young to express a preferred outcome of the termination proceedings. Trial Ct. Op., dated August 24, 2021, at 33.

housing; and complete domestic violence counseling. N.T. Termination Hearing, 4/22/21, at 8-28.

Ms. Davis further testified that Father failed to consistently attend in-person and virtual visitation with Child, and that out of a total of 48 visits he missed 21 and attended 27. *Id.* at 17. Ms. Davis explained that during the weekly supervised visits, Father is engaged and affectionate, but that Child has recently been crying at the beginning of the reinstated in-person visits. *Id.* at 18. Ms. Davis stated that Child is living in a pre-adoptive home with his foster parents and foster sister, is "extremely attached to them," and runs to them and smiles after the visits. *Id.* at 19-20.

Father testified that he graduated high school but cannot read, does occasional odd jobs for money, volunteers at a church to "do security" several times a week, and receives monthly social security benefits due to his mental health issues. *Id.* at 31-33, 37-38. Father also testified that he suffers from a traumatic brain injury caused by a car accident that killed his parents when he was eight years old. *Id.* at 37-38. Father stated that a doctor has diagnosed him with bipolar disorder, depression, and paranoia. *Id.* 37 Father repeatedly informed the court that he cannot focus his mind, he lost his mind, and he cries every day for several hours at a time. *Id.* at 37, 38, 41, 43, 48, 49. Father explained that he was not currently taking medication because he did not have insurance and did not trust medication. *Id.* at 39, 49. However, Father informed the court that he was going to try to obtain a prescription for

medical marijuana to help him overcome his mental health issues and care for Child. *Id.* at 49.

Father testified that he was currently renting a room, without access to a kitchen, but that he had filled out eight applications to obtain appropriate housing for himself and Child. *Id.* at 30. Father testified that he does not remember the Agency helping him register for parenting classes, he completed domestic violence classes but did not provide his certificate to the Agency, and he did not know why he did not stay to complete the parenting capacity evaluation and missed several appointments. *Id.* at 33-36, 50-51. Father further testified that he would attend a newly scheduled appointment for an evaluation, but he did not want to stay late because he has "things to do at nighttime." *Id.* at 34.

Father explained that he enjoys visits with Child, and that he changes Child's diapers, buys him juice and snacks, and talks with him. *Id.* at 42. Father stated that he and Child both cry at the end of the visits and that he wants to "fight for his son." *Id.* at 42, 43.

At the conclusion of the hearing, Child's court-appointed attorney and *guardian ad litem* advocated that termination of Father's parental rights was in Child's best interest. *Id.* at 53.

On May 27, 2021, after considering the presented evidence and reviewing the incorporated dependency record, the trial court granted the Agency's petition to terminate Father's parental rights to Child. Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

**Motion to Withdraw**

On September 21, 2021, Father's counsel filed a Motion to Withdraw and an *Anders* Brief. Appellant did not respond.

In the *Anders* Brief, appellate counsel asks us to consider, "whether the court erred in terminating Father's parental rights to [C]hild because the [Agency] failed to prove by clear and convincing evidence that Father's parental rights should be terminated under 23 Pa.C.S.[] Section 2511." *Anders* Br. at 8.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel. "When presented with an *Anders* Brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). In order for counsel to withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet the following requirements:

(1)  provide a summary of the procedural history and facts, with citations to the record;
(2)  refer to anything in the record that counsel believes arguably supports the appeal;
(3)  set forth counsel's conclusion that the appeal is frivolous; and
(4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Counsel has complied with the mandated procedure for withdrawing as counsel. Additionally, counsel confirms that she sent Father a copy of the **Anders** Brief and Motion to Withdraw, as well as a letter explaining to Father that he has the right to retain new counsel, proceed *pro se*, and to raise any additional points. **See Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements).

Having addressed counsel's technical compliance with **Anders**, we will address the substantive issue raised by counsel. In addition, we must conduct "a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

**LEGAL ANALYSIS**

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id**. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could

support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008).

**Termination Pursuant to Section 2511(a)(1)**

Upon review, we conclude that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(a)(1).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."  23 Pa.C.S. § 2511(a)(1).  The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights.  *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001).  Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision.  *K.Z.S.*, 946 A.2d at 758.  Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination."  *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations, internal quotation marks, and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted).

Instantly, the trial court emphasized that Father chose to move to a different state for three of the six months preceding the Agency's filing of the termination petition, precluding him from performing parental duties or advancing his objectives for reunification. The trial court opined:

> For the six months period preceding the filing of the Agency's termination of parental right's petition[,] which was on or about September 1, 2020, Father did nothing to advance the completion of [the] permanency plan objectives. Father had left a message

- 10 -

for the caseworker in August that Father wanted nothing to do with [] Child and had then moved to Florida. Father's course of conduct and failure to work on his objectives confirms Father's decision to relinquish his parental role. . . . Father failed to complete the parenting capacity evaluation after the evaluation had been scheduled on six occasions. . . . After disavowing further participation in the juvenile dependency case, Father left for Florida and had no contact at all with [] Child for approximately three months between August and November 2020. When Father returned to Pennsylvania, [] Child did not recognize Father and cried at the beginning of visits. Over the course of this case, Father made only nominal efforts to build and maintain the parent-child relationship between him and [] Child.

Trial Ct. Op., dated August 24, 2021, at 36-37. Moreover, the trial court credited Ms. Davis' testimony that Father failed to complete or advance his permanency plan objectives and utilize all available resources to maintain a parent-child relationship with Child and facilitate reunification. The trial court further opined:

Father's patterns of behavior illuminates his inability to honor obligations and commitments. The record is replete with instances where Father missed appointments and visits and failed to engage or complete trainings or therapies which might have helped him become capable of parenting [] Child. These behaviors lead inevitably to the conclusion that Father would not fulfill the duties attendant to raising [] Child in a healthy environment. Grounds for termination of Father's parental rights under [Section] 2511(a)(1) have been proved by clear and convincing evidence.

*Id.* at 38. Our review of the record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations. Accordingly, we find no abuse of discretion in the trial court's conclusion that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(a)(1).

**Termination Pursuant to Section 2511(b)**

Upon review, we conclude that the Agency also presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(b).

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. This Court reviews whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).

One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, "with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent does not preclude the termination of parental rights. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. *Id.* at 898. Moreover, the trial court may consider intangibles, such as the

love, comfort, security, and stability the child might have with the adoptive resource. ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010).

Instantly, the trial court found that Child did not have a meaningful bond with Father, and that terminating Father's parental rights would be in Child's best interest. The trial court opined:

> At this time [] Child is approaching two years of age. It is fair to state that, given the minimal contact which has existed between [] Child and Father, [] Child has no meaningful bond with Father. The only family this Child knows is his resource family. [] Child deserves the permanency the resource family can provide.

Trial Ct. Op. at 39. The record supports the trial courts findings, and we discern no abuse of discretion.

**CONCLUSION**

In conclusion, our review of the record supports the trial court's findings. We discern no error of law or abuse of discretion with respect to the trial court's conclusion that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(a) and (b).

Furthermore, our independent review of the record, conducted in accordance with ***Dempster***, ***supra***, confirms counsel's assertion that there are no issues of merit to be considered by this Court and this appeal is, thus, wholly frivolous. Accordingly, we grant counsel's Motion to Withdraw and affirm the Decree involuntarily terminating Father's parental rights.

- 13 -

Counsel's Motion to Withdraw granted.  Decree affirmed.

Judge McCaffery joins the memorandum.

Judge McLaughlin concurs in results.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/08/2021